UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| PAMALA PELLON-IRWIN, </br></br> Plaintiff, </br></br> v. </br></br> EASTERN MAINE HEALTHCARE SYSTEMS, d/b/a NORTHERN LIGHT HEALTH, </br></br> and </br></br> MRH CORP., d/b/a NORTHERN LIGHT MAYO HOSPITAL, </br></br> Defendants | Civil Action No. 1:25-cv-00301-JCN |

**DEFENDANTS' MOTION TO DISMISS COMPLAINT
WITH INCORPORATED MEMORANDUM OF LAW**

Defendants Eastern Maine Healthcare Systems, d/b/a Northern Light Health, and MRH Corp., d/b/a Northern Light Mayo Hospital (collectively, "Defendants"), move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Complaint (ECF Doc. 1). The reason for this motion, as set forth more fully below in the incorporated memorandum of law, is that the allegations of discrimination and retaliation are untimely and, therefore, the Complaint fails to state a claim upon which relief can be granted and, thus, should be dismissed.

**INCORPORATED MEMORANDUM OF LAW**

**INTRODUCTION**

This case arises out of Plaintiff's employment as a nurse practitioner at Mayo Regional Hospital. Plaintiff alleges sexual harassment and retaliation in her employment at the hospital; however, all of her allegations are time-barred. Specifically, Plaintiff failed to file an

administrative charge of discrimination with the Maine Human Rights Commission ("MHRC") or the Equal Employment Opportunity Commission ("EEOC") within 300-days of the date her employment was terminated. Because the Complaint does not contain a single allegation of discrimination within the 300-day look back period under the Maine Human Rights Act ("MHRA") and Title VII, it fails to state a claim upon which relief can be granted.

## FACTS

The Complaint alleges the following facts, which must be taken as true for the purposes of this motion.[1] Plaintiff is a nurse practitioner who started working for Defendants in 1999. Compl. ¶¶ 15-16. In May 2019, Plaintiff started working in the Emergency Department at Mayo Regional Hospital in Milo, Maine ("Mayo Hospital"), and she also worked as a nurse practitioner on behalf of Northern Light in the Piscataquis County Jail medical clinic. Compl. ¶ 18. During her time at Mayo Hospital, Plaintiff was the only fulltime female provider in the Emergency Department. Compl. ¶ 20. Plaintiff alleges that she "was subjected to frequent sex-based harassment from male colleagues and supervisors." Compl. ¶ 22.

Plaintiff alleges that a physician's assistant named Charles Reimers frequently harassed her by making inappropriate comments and engaging in unwanted touching. Compl. ¶¶ 23, 25, 27-29. (The Complaint does not include dates of the alleged harassment but, presumably, the alleged harassment occurred between May 2019 when Plaintiff started working at Mayo Hospital and March 2021 when Reimers resigned from Mayo Hospital.) Plaintiff alleges that she reported the first instance of harassment to the nursing supervisor, Compl. ¶¶ 25-26, but did not report the other instances until after Reimers resigned, Compl. ¶¶ 33, 56. In March 2021, Plaintiff's co-

---

[1] Since this motion is based on Plaintiff's allegations being untimely under the MHRA's and Title VII's 300-day look back period, most of the facts pled in the Complaint are irrelevant to the motion. However, in the interest of giving the Court the factual background as pled by Plaintiff, Defendants have summarized the allegations of discrimination and retaliation as set forth in the Complaint.

2

worker made a report to Dr. James McDermott that both Plaintiff and the co-worker had been harassed by Reimers. Compl. ¶¶ 33-34. Upon receiving the report of harassment, Defendants allowed Reimers to resign in lieu of being terminated. Compl. ¶ 35. Thereafter, two male colleagues in the Emergency Department treated Plaintiff with hostility until they learned that she was not the person who made the report. Compl. ¶¶ 37-38.

Additionally, Plaintiff alleges generally that throughout her five years at Mayo Hospital, she "experienced severe and pervasive hostility from male providers in and out of the ED. Their hostile and abusive actions included screaming at Plaintiff, physical intimidation, violently cursing at her, and openly disrespecting [Plaintiff] in front of her colleagues and patients." Compl. ¶ 40. According to Plaintiff, a physician's assistant named Jesus Gandarillas, screamed and cursed at her over trivial things such as Plaintiff talking about her daughter or where she chose to sit at the nursing station, Compl. ¶ 41, and on one occasion, blocked a doorway while screaming, Compl. ¶ 42.

Plaintiff also alleges that a registered nurse, Erik Cline, got upset with her and was openly disrespectful and unprofessional on April 18, 2022, when she was working with a young patient and the supervisor decided to call for anesthesia. Compl. ¶¶ 46-48. The next day, Cline confronted Plaintiff about the incident, blocked the doorway to her office, and walked up to chair and stood over her while screaming and cursing. Compl. ¶¶ 50-51. On April 19, 2022, Plaintiff emailed Dr. McDermott about Cline's "abusive and inappropriate conduct" and he responded by blaming her for the issue. Compl. ¶ 52.

HR Director Kristy Rizzitello asked Plaintiff and other Emergency Department employees to meet with her about "the hostile work environment at Mayo Hospital." Compl. ¶¶ 54-55. Plaintiff met with HR Director Rizzitello on April 20, 2022. Compl. ¶ 54. In her meeting,

3

Plaintiff disclosed the harassment she experienced in years prior with Reimers, and that "certain male coworkers had engaged in frequent, unprofessional outbursts and physical intimidation." Compl. ¶¶ 56-57. She also reported "several examples of substandard care in the ED, one of which resulted in the death of a patient." Compl. ¶ 58. According to Plaintiff, on April 21, 2022, Dr. McDermott emailed her "colleagues in retaliation to solicit negative and unfair criticism of her performance" and shared the criticism with HR. Compl. ¶¶ 59-60.

Plaintiff also alleges that on April 6, 2022, Dr. McDermott contacted Plaintiff about a new employment contract and she noticed that, unlike her male colleagues, it had an open-ended non-compete clause. Compl. ¶¶ 43, 45. "When Plaintiff asked Dr. McDermott about the issue, he said he would fix it." Compl. ¶ 44.

Defendants terminated Plaintiff's employment on April 27, 2022. Compl. ¶ 62. "Dr. McDermott called Plaintiff and notified her that she was being terminated because of an incident two weeks prior when she did not register a patient who was forcibly taken to the ED by her group home." Compl. ¶ 63. Plaintiff filed a complaint of discrimination with the MHRC and EEOC "on or about February 21, 2023." Compl. ¶ 11.[2]

## ARGUMENT

### I.   Legal Standard.

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must set forth facts sufficient to state a legal claim on which relief could be granted." *Giragosian v. Bettencourt*, 614 F.3d 25, 28-29 (1st Cir. 2010). The court conducts a two-step analysis test to evaluate the sufficiency of a complaint. *Guadalupe-Báez v. Pesquera,* 819 F.3d 509, 514 (1st Cir. 2016). First, the court "must separate the complaint's factual allegations

---

[2] As discussed below, the exact date that the administrative complaint was filed was February 24, 2023.

(which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Id.* (quoting *Morales-Cruz v. Univ. of P.R.,* 676 F.3d 220, 224 (1st Cir. 2012)). Second, "the court must determine whether the well-pleaded facts, taken in their entirety, permit 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Morales-Cruz,* 676 F.3d at 224). Particularly relevant here, "[a]ffirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that 'the facts establishing the defense [are] clear on the face of the plaintiff's pleadings.'" *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008) (quoting *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001) (additional internal quotations omitted)).

Moreover, in ruling on a motion to dismiss, "a court ordinarily may only consider facts alleged in the complaint and exhibits attached thereto…or else convert the motion into one for summary judgment." *Freeman v. Town of Hudson*, 714 F.3d 29, 35-36 (1st Cir. 2013) (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). However, "under certain 'narrow exceptions,' some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment." *Id.* at 36 (citing *Watterson*, 987 F.2d at 3). The "narrow exceptions" include "documents the authenticity of which are not disputed by the parties", "official public records", and "documents central to plaintiffs' claim". *Id.* (quoting *Watterson*, 987 F.2d at 3).

## II. Plaintiff's Allegations of Discrimination and Retaliation are Untimely and, thus, the Complaint Fails to State a Claim under the MHRA or Title VII

Plaintiff's Complaint asserts six claims for discrimination and/or retaliation under the MHRA and Title VII. Because Plaintiff did not timely file an administrative charge with the MHRA or EEOC, all of the alleged acts of discrimination and retaliation in support of her claims

5

under the MHRA and Title VII are untimely and, thus, all such claims must be dismissed for failure to state a claim upon which relief can be granted.

Under both the MHRA and Title VII, a timely administrative charge must be filed within 300 days after the alleged unlawful employment practice occurred. 5 M.R.S. § 4611; 42 U.S.C. § 2000e-5(e)(1); *see also MacDonald v. Brewer Sch. Dep't*, 651 F. Supp. 3d 243, 256 (D. Me. 2023) (discussing 300-day deadline for hostile work environment claim under MHRA and Title VII); *Ramsdell v. Huhtamaki, Inc.*, 992 F. Supp. 2d 1, 15-16 (D. Me. 2014) (discussing 300-day deadline for retaliation claim under MHRA and Title VII); *Ayala v. Shinseki*, 780 F.3d 52, 56 (1st Cir. 2015) (discussing 300-day deadline and untimeliness of discrete discriminatory acts under Title VII).[3] The Complaint alleges that Plaintiff filed her first administrative charge with the MHRC and EEOC "on or about February 21, 2023." Compl. ¶ 11. If the administrative charge had been filed on February 21, 2023, then the 300-day "look back period" under the MHRA and Title VII would establish a cut-off date of April 27, 2022—the date Plaintiff was terminated. *See Ramsdell*, 992 F. Supp. 2d at 16.

However, the administrative charge was actually filed on February 24, 2023. A copy of the first page of Plaintiff's administrative charge dual filed with the MHRC and EEOC is attached as **Exhibit A**. As referenced above, the Court may consider this document without converting the motion to dismiss into a motion for summary judgment because the authenticity of Plaintiff's administrative charge is not in dispute. *See Freeman* 714 F.3d at 36. Additionally, it is a public record, and it is central to her hostile work environment claims as it is determinative of the timeliness of those claims. *See id.*; *see also* 5 MRS 4612(1)(B) (discussing complaint

---

[3] If an administrative charge is not filed with a state agency and, instead, is only filed with the EEOC, it must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1).

being matter of public record at the conclusion of the investigation); 94-348 C.M.R. ch. 2, § 2.05(g)(3) (same). Indeed, in *Gamst v. Boston University*, the court considered a Massachusetts Commission Against Discrimination complaint as an official public record subject to judicial notice and used that record to determine the correct filing date of the complaint. *Gamst v. Bos. Univ.*, No. CV 23-12452-FDS, 2024 WL 758173, at *1 n.1, n.2 (D. Mass. Feb. 23, 2024).

Here, the first page of the administrative charge makes clear that it was "RECEIVED on February 24 2023 by Maine Human Rights Commission". **Exhibit A**. Pursuant to the MHRC's procedural rules, an administrative charge is filed with the MHRC on the date it is received, provided that it is received during business hours. 94-348 C.M.R. ch. 2, § 2.02E. If the administrative charge is received after business hours, it is considered filed on the next business day. *Id.* Because Plaintiff's administrative charge was filed on February 24, 2023, the 300-day "look back period" establishes a cut-off date of April 30, 2022—three days after Plaintiff was terminated. *See Ramsdell*, 992 F. Supp. 2d at 16. Unlike the employee in *Ramsdell* who filed her administrative charge 300 days after she was suspended from work and, therefore, filed a timely claim with respect to the discrete act of the suspension, *id.*, Plaintiff in this case filed her administrative charge 303 days after she was terminated and, therefore, did not file a timely claim with respect to any action taken by Defendants.

Where Plaintiff has not alleged a single act of discrimination or retaliation within the 300-day look back period, there is no act to which she can "anchor" her hostile work environment allegations and, thus, she cannot use the continuing violation doctrine as referenced in the Complaint to save her claims. *See, e.g.*, *Shervin v. Partners Healthcare Sys., Inc.*, 804 F.3d 23, 34 (1st Cir. 2015) (explaining that plaintiff bears the burden of establish all three elements of the continuing violation doctrine, including that "the claim must be 'anchored' by at least one

7

incident of discrimination or retaliation transpiring within the limitations period."); *Diaz v. Jiten Hotel Mgmt., Inc.*, 671 F.3d 78, 85 (1st Cir. 2012) (explaining that for the continuing violation doctrine to apply, there must be "a discrete violation within the statute of limitations period to anchor the earlier claims."). Accordingly, all of the alleged acts of discrimination and retaliation in the Complaint are untimely (i.e. occurred more than 300-days before Plaintiff filed her administrative charge) and, thus, Plaintiff cannot state a claim for relief under the MHRA or Title VII.

## **CONCLUSION**

For the foregoing reasons, Defendants Eastern Maine Healthcare Systems, d/b/a Northern Light Health, and MRH Corp., d/b/a Northern Light Mayo Hospital respectfully request that this Court dismiss Plaintiff's Complaint with prejudice for failure to state a claim upon which relief can be granted.

Dated at Portland, Maine this 21st day of August, 2025

/s/ *Jeana M. McCormick*
Kasia S. Park
Jeana M. McCormick
*Attorneys for Defendants*

**DRUMMOND WOODSUM**
84 Marginal Way, Suite 600
Portland, ME
(207) 772-1941
kpark@dwmlaw.com
jmccormick@dwmlaw.com